# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : Case No. 3:16-cr-114 |
| v. | : Judge Thomas M. Rose |
| KEON RUTLEDGE, | : |
| Defendant. | : |

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION RECONSIDERATION OF MOTION FOR COMPASSIONATE RELEASE (ECF 53)**

This case is before the Court on a Motion for Reconsideration of his Motion for Compassionate Release (ECF 53) filed by Defendant Keon Rutledge. Defendant is currently incarcerated and previously asked this Court for compassionate release from his term of imprisonment. (ECF 50). The United States filed a response to the original motion (ECF 51), opposing the motion and asking the Court to deny it. The Court did deny it, (ECF 52), and Rutledge has asked the Court to reconsider that decision. No response to the motion to reconsider has been filed, and the time for doing so has expired. The matter is ripe for review. Because the original motion was denied for failure to exhaust administrative remedies, which Rutledge has now exhausted, the Court will reconsider its decision, reaching, however, a similar conclusion.

## I. BACKGROUND

On or about March 17, 2017, Rutledge was sentenced to 90 months imprisonment after his conviction for "Possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of Cocaine," in violation of 21 U.S.C. §§ 841(a)(1) and

(b)(1)(B). (ECF 43, Judgment.) The Bureau of Prisons ("BOP") website lists his release date as September 25, 2022. (https://www.bop.gov/inmateloc/ visited June 16, 2021).

Rutledge asserts that during his incarceration, he maximized every opportunity to overcome his drug addiction and grew emotionally and professionally. He has completed several addiction classes, as well as 20 programs that will help with his re-entry process. Additionally, upon being at FCI Morgantown Minimum, Rutledge asserts he has completed the 500-hour Residential Drug Abuse Program (RDAP) which he graduated from on December 14, 2020. (see attached certificate to document)

Rutledge has the full support of his family upon release. He will be reunited with his fiancée LaKeshia Horton with whom he speaks every day since his incarceration. (ECF 53-1).

Rutledge has completed 78% or more of his time. He has about 14 months left on his sentence. (CTS) Community Treatment Services states; Inmates can still complete (TDAP) "Transitional Drug Abuse Program" after care while on home confinement as long as they participate in required counseling.

Rutledge is incarcerated at FCI Morgantown, which has a population of 470 inmates. Vaccines have been administered to 96 staff members and 221 inmates. Currently, one staff member and no inmates have COVID-19. Correspondingly, 175 inmates have recovered, as have 32 staff members, while none have died. (https://www.bop.gov/coronavirus/ visited June 16, 2021).

## II.     ANALYSIS

The motion asks the Court to "reconsider its May 26th, 2020 order denying Rutledge motion for compassionate release…." (ECF 53, PageID 158.) Defendant asks the Court to grant

him a reduction in sentence as permitted by 18 U.S.C. § 3582(c)(1)(A)(i) and to consider what he alleges are extraordinary and compelling reasons for doing so.

Section 603(b) of the First Step Act, which was signed into law on December 21, 2018, modified 18 U.S.C. § 3582 to allow a defendant to bring a motion on his or her own behalf either "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub L. No. 115-391, 132 Stat. 5194; *see also United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020) ("If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison," and "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them") (internal quotation marks omitted) (alterations adopted).

A district court has limited authority to modify a sentence. "Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). Section 3582(c)(1)(A) grants such authority in certain limited circumstances. It provides in part:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant

such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

Thus, the Court can modify a term of imprisonment if it finds that (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) such a reduction is appropriate "after considering the factors set forth in § 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020); *United States v. Spencer*, No. 20-3721, 2020 U.S. App. LEXIS 28051, at *4, 2020 WL 5498932 (6th Cir. Sept. 2, 2020).

While judges "have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *United States v. Jones*, No. 20-3701, – F.3d –, 2020 WL 6817488 at *9 (6th Cir. November 20, 2020), the Court references U.S.S.G. § 1B1.13 for guidance. Therein, the Sentencing Commission identifies four circumstances in which "extraordinary and compelling reasons" may exist. *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in § 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). United States Sentencing Commission, Guidelines Manual, § 1B1.13, at cmt. n.1 (Nov. 1, 2018) (Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)). Those four circumstances are: (A) Medical Condition of the Defendant; (B) Age of the Defendant; (C) Family Circumstances; and (D) other extraordinary and compelling reasons. *Id.* Each of the four circumstances has its own parameters. *Id.* Commentary also confirms that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself,

an extraordinary and compelling reason for purposes of this policy statement." *Id.* at cmt. n.3; *see also United States v. Keefer*, No. 19-4148, 2020 U.S. App. LEXIS 32723, at *6-7, 2020 WL 6112795 (6th Cir. Oct. 16, 2020) ("[i]n Application Note 1 to § 1B1.13, the Commission also listed the 'extraordinary and compelling reasons' that might entitle a defendant to a sentence reduction").

The policy statement also encourages the Court to consider whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; *see also Kincaid*, 802 F. App'x at 188; *Spencer*, 2020 U.S. App. LEXIS 28051, at *4 ("[t]he district court must also find that the defendant is not a danger to the safety of any other person or to the community") (internal quotation marks omitted). Section 3142(g) provides factors to be considered in making that "danger to the safety" determination.

Specifically, 18 U.S.C. § 3142(g) states:

> (g) Factors to be considered. The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of § 1591 [18 USCS § 1591], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

5

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g); *see also United States v. Jones*, No. 20-3748, 2020 U.S. App. LEXIS 32451, at *4-5 (6th Cir. Oct. 14, 2020).

The factors set forth in § 3553(a) "include, among others, 'the nature and circumstances of the offense'; the defendant's 'history and characteristics'; the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, and afford adequate deterrence; and the need to avoid unwarranted sentencing disparities." *Jones*, 2020 U.S. App. LEXIS 32451, at *6 (quoting 18 U.S.C. § 3553(a)(1), (2), (6)).

Moreover, "compassionate release is discretionary, not mandatory." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that a court "may" reduce the term of imprisonment); *Keefer*, 2020 U.S. App. LEXIS 32723, at *7 ("The statute's plain text makes evident the discretionary nature of a compassionate-release decision," and "the statute lists factors that, when present, *permit* a district court to reduce a sentence") (emphasis in original).

The Bureau of Prisons has taken significant measures to protect inmates. On March 13, 2020, in accordance with its Coronavirus (COVID-19) Action Plan, BOP began to modify its

operations to minimize the risk of COVID-19 transmission into and inside its facilities. Since that time, BOP has repeatedly revised the Action Plan to address the crisis. Beginning November 25, 2020, BOP implemented Phase Nine of the Action Plan, which currently governs operations. https://sallyport.bop.gov/co/hsd/infectiousdisease/COVID19/index.jsp. The current operations plan follows all national guidelines and requires that, upon intake, all inmates be secured in their assigned quarters for a period of at least 14 days in order to stop spread of the disease. Inmates are required to wear masks at all times except eating and sleeping. Three washable cloth masks have been provided to each inmate. Only limited movement is afforded to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited movement of inmates and detainees among its facilities. Symptomatic inmates and asymptomatic inmates with a risk of exposure are placed in quarantine until cleared by medical staff. Social visits, where allowed, are non-contact. *See* www.bop.gov/coronavirus/COVID19_status.jsp. (Telephone minutes have been increased from 300 a month to 500, with no charge.) Finally, inmates and staff are being vaccinated.

  In an effort to assist inmates who are most vulnerable to the disease and pose the least threat to the community, BOP is also exercising greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed BOP to prioritize transferring inmates to home confinement in appropriate circumstances when those inmates are vulnerable to COVID-19 under the CDC risk factors.

  As of mid-October 2020, the CDC has concluded that individuals with certain conditions such as smoking, Type II diabetes, chronic heart problems, cancer, immuno-compromised due to organ transplant, and obesity "are at an increased risk for severe illness from COVID . . ." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

conditions.html (last accessed October 27, 2020). During the current COVID-19 pandemic, an inmate who presents one of the risk factors on that list, as confirmed by medical records, and who is not expected to recover from that condition, would satisfy the extraordinary and compelling prong of the compassionate release policy statement -- even if that condition in ordinary times would not allow compassionate release.

Conversely, the CDC has opined that "there are limited data and information about the impact of [other] underlying medical conditions and whether they increase the risk for severe illness from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed October 27, 2020). People who fall into this category and "might be at an increased risk for severe illness" include individuals with moderate to severe asthma. Id. Given the lack of data concerning these conditions, their interaction with COVID is speculative and would not at this time satisfy the extraordinary and compelling criteria of the policy statement.

A subsequent memorandum from the Attorney General on April 3, 2020 further directed BOP to expand the range of inmates eligible for home confinement, as authorized by the CARES Act. *See* § 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted March 27, 2020. In assessing whether home confinement is appropriate for a particular inmate, BOP weighs numerous factors, including the inmate's medical conditions, age, crime of conviction, and conduct while in prison; conditions in the inmate's particular institution; availability of post-release transportation, housing and supervision for the inmate; and the inmate's risk from COVID-19 if released. Prior to releasing an inmate, BOP is directed to implement a fourteen-day quarantine in order to protect the community.

BOP asserts it is devoting all available resources to executing the Attorney General's directives, and that it is systematically assessing the inmate population to determine which inmates are most appropriate for transfer. From the Attorney General's memo on March 26, 2020 until November 6, 2020, the BOP placed 7,766 inmates on home confinement. *See* www.BOP.gov/coronavirus (accessed November 6, 2020). By January 29, 2021, 7,837 were on home confinement; but counting those who had completed their home confinement, along with those currently on it, that number was 21,069. (id. accessed January 29, 2021).

The Court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) if, "after considering the factors set forth in § 3553(a) to the extent that they are applicable," the Court "finds that" "extraordinary and compelling reasons warrant such a reduction" "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress directed that the Sentencing Commission adopt policies regarding "what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(a)(2)(C) & (t). The Sentencing Commission fulfilled Congress's directive by issuing U.S.S.G. § 1B1.13. The policy statement provides for reduction of a sentence, after considering the § 3553(a) factors, if (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer,

amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(D).

Because the Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include only certain specified categories of medical conditions, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement. If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion will be denied.

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction. The categories encompass specific

serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). To classify COVID-19 without further extenuating circumstances as an extraordinary and compelling reason would be wrong and would be detrimental to B.O.P.'s organized and comprehensive anti-COVID-19 regimens.

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under § 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably could be found to be "serious" and to "substantially diminish[ ] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I). But as part of its analysis of the totality of circumstances, the Court should consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated. That will typically depend on the inmate's proposed release plans and whether a known outbreak has occurred at his or her institution.

Here, Rutledge has attached medical records that indicate that he suffers from high blood pressure. ECF 888-91. The CDC lists high blood pressure as a condition that can "possibly" make one more likely to get severely ill from COVID-19. (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

conditions.html visited June 7, 2021). However, given that COVID-19 is largely controlled in Rutledge's community due to vaccines, Rutledge has not established an extraordinary and compelling reason for a reduction in a sentence.

Even if Rutledge satisfied the "extraordinary and compelling reasons" inquiry, relief is unwarranted considering the factors set forth in 18 U.S.C. § 3553(a). See § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). The nature and circumstances of Rutledge's crime weighs against relief. Rutledge committed a serious offense, attempting to traffic a large amount of drugs.

Rutledge's history and characteristics also suggest that this motion should be denied. Prior to this offense, he has multiple convictions for drug distribution. Rutledge has three prior felony drug/drug-related convictions and has served prior prison terms. (PSR, ¶¶ 53, 55, 56). Similarly, the need to avoid sentencing disparities and the need to ensure just punishment weigh against relief.

The Court recognizes it is extraordinarily difficult to combat the spread of COVID-19 within a prison, as both courts and the CDC have recognized. *United States v. Gardner*, No. 14-cr-20735-001, 2020 U.S. Dist. LEXIS 129160, at *4–*5 (E.D. Mich. July 22, 2020). Even under otherwise ideal circumstances, prison conditions prevent the kind of physical distancing necessary to prevent the spread of this virus. Id. However, as of June 23, 2021, the BOP administered 196,660 doses of the vaccine. The BOP has 129,200 federal inmates in BOP-managed institutions and 13,846 in community-based facilities. There are 71 federal inmates and 135 BOP staff who have confirmed positive test results for COVID-19 nationwide. Currently, 44,439 inmates and 6,874 staff have recovered. While there have been 240 federal inmate deaths, 5 occurred while on home

confinement.https://www.bop.gov/resources/news/20210116_COVID_vaccine_efforts_commen
ded.jsp.

Rutledge's release plan is to apply for CDL education, than apply for work at a WalMart warehouse for a 3rd shift position. He proposes working from 10pm until 6am Monday through Friday, 40 hours a week, come home at 7am to get his kids ready for school and put them on the school bus or take them to school. Then return home, clean up and go to sleep, waking at 2pm, get the kids from school sit down with them as they do their homework, prepare dinner for his fiancee to finish when she gets home from work around 3pm, then spend some time with his family before returning to work. His fiancée has appropriate housing for him.

However, the need for the sentence imposed to "provide the defendant with…medical care…in the most effective manner," 18 U.S.C. § 3553(a)(2)(D), does not weigh in favor of granting this motion to reduce the sentence. The spread of COVID-19 at FCI Morgantown is shrinking. Cf. *United States v. Williams-Bethea*, No. 18-cr-78, 2020 U.S. Dist. LEXIS 96651, at *10–*11 (S.D.N.Y. June 2, 2020); *United States v. Rodriguez*, No. 2:03-cr-271, 2020 U.S. Dist. LEXIS 58718, at *32 (E.D. Pa. Apr. 1, 2020).

Moreover, factors in §§ 3553(a)(2)(A), (B) and (a)(6) weighs neither for, nor against reducing the sentence. Rutledge was sentenced in March 2017. His current projected release date is September 25, 2022. Defendant's continued detention now does not pose danger of serious injury and death, so the Court cannot say it is a risk grossly disproportionate to the conduct of conviction. *Cf. Williams-Bethea*, 2020 U.S. Dist. LEXIS 96651, at *12. Because of the seriousness of the offense, and because it would present a risk to the public, compassionate release is not warranted here.

Even when a defendant is able to demonstrate a potentially "extraordinary and compelling reason," compassionate release is not necessarily appropriate. Under the applicable policy statement, the Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Additionally, the Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. *See* § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). Here, "the nature and circumstances" of Defendant's crime weighs against relief at this point. 18 U.S.C. § 3553(a)(1).

Rutledge's "history and characteristics" likewise do not support relief. 18 U.S.C. § 3553(a)(1). The need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, and protect the public similarly cuts against relief. See 18 U.S.C. § 3553(a)(2). In view of the § 3553 sentencing factors, compassionate release is improper here. *See* § 3582(c)(1)(A).

## III. CONCLUSION

Defendant does not meet the requirements necessary to be granted relief under 18 U.S.C. § 3582(c)(1)(A). Thus, the Court **DENIES** Motion for Reconsideration of his Motion for Compassionate Release. (ECF 53).

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, July 1, 2021.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE
